IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| SARAH J. SHELTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:06-CV-195 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. For the reasons provided herein, defendant's motion for summary judgment [doc. 12] will be granted, and plaintiff's motion for summary judgment [doc. 9] will be denied.

I.

*Procedural History*

Plaintiff was born in 1972. She applied for benefits in December 2003, claiming to be disabled by "panic attacks," depression, eye and head pain, and limited use of the right extremities. [Tr. 60, 75, 381]. Plaintiff alleged a disability onset date of

September 1, 2003. [Tr. 60, 381].[1] Her applications were denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") on October 4, 2005.

On October 28, 2005, the ALJ issued a decision denying benefits. He concluded that plaintiff suffers from borderline intelligence and an impairment of the right eye, which are "severe" but not equal, individually or in concert, to any impairment listed by the Commissioner. [Tr. 19-20]. Characterizing plaintiff's subjective complaints as "clearly overstated and exaggerated," the ALJ found her to have a residual functional capacity ("RFC") at the light level of exertion restricted by mild mental limitations and "no useful vision in the right eye." [Tr. 20]. Relying on vocational expert testimony, he determined that plaintiff remained able to perform a significant number of jobs existing in the regional and national economies. [Tr. 20]. Plaintiff was accordingly deemed ineligible for benefits.

Plaintiff then sought, and was denied, review from the Commissioner's Appeals Council, despite the submission and consideration of additional medical records. [Tr. 8, 11, 395-446].[2] The ALJ's ruling therefore became the Commissioner's final decision.

---

[1] Due to injuries received in a motor vehicle accident, plaintiff previously received benefits from 1994-1998. [Tr. 37-39].

[2] Plaintiff's additional documents are discussed in her brief and are included in the administrative record. [Tr. 395-446]. "[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted). This court can, however, remand a case for further administrative proceedings, but only if the claimant
(continued...)

*See* 20 C.F.R. §§ 404.981, 416.1481. Through her timely complaint, plaintiff has properly brought her case before this court. *See* 42 U.S.C. § 405(g).

II.

*Applicable Legal Standards*

This court's review is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g)*; Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

---

²(...continued)
shows that her evidence meets each prong of the "new, material, and good cause" standard of sentence six, 42 U.S.C. § 405(g). *Id.* The present plaintiff has made no effort to articulate how her evidence warrants sentence six remand, nor has she even cited sentence six. The issue is accordingly waived, and plaintiff's additional medical evidence has *not* been considered. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("Plaintiff has not only failed to make a showing of good cause, but also has failed to even cite this relevant section or argue a remand is appropriate."); *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (citation omitted).

A claimant is entitled to disability insurance payments if she (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A).[3] Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

---

[3] A claimant is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. 42 U.S.C. § 1382. "Disability," for SSI purposes, is defined the same as under § 423. 42 U.S.C. § 1382c(a)(3).

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id*.

III.

*Background*

Plaintiff attended school into the tenth grade and later obtained a G.E.D. [Tr. 81, 450]. Her past relevant work is as a machine operator and as a nursing assistant. [Tr. 76, 157, 451].

Plaintiff purportedly is able to do virtually no housework "because of nerves and panic attacks." [Tr. 111]. She has related her stresses to a "chaotic" series of romances. [Tr. 261, 222]. She allegedly cannot drive, shop, or attend church due to "panic attacks" brought on by "crowds." [Tr. 111-12, 454]. Nonetheless, she remains able to eat at restaurants "often." [Tr. 294].

Plaintiff claims to suffer from "at least" four "panic attacks" per day [Tr. 135, 457] for which she takes one Xanax and then naps for approximately two hours after each purported event. [Tr. 457]. Plaintiff's allegations regarding her right extremities range from

5

not having "full use of [her] right arm and leg" [Tr. 108, 292] to "paralyzed."  [Tr. 292].

IV.

*Vocational Evidence*

Dr. Norman Hankins ("Dr. Hankins" or "VE") testified as a vocational expert at the administrative hearing in this case. The ALJ presented a hypothetical claimant of plaintiff's height, age, education, and work experience who would have no useful vision in the right eye and would be capable of no more than light work [Tr. 460-61]. The hypothetical claimant would also have borderline intellectual functioning and mild limitations of understanding, remembering, concentrating, persisting, and adapting, consistent with the evaluation of examining psychologist Steven Lawhon. [Tr. 461, 295-96].

Dr. Hankins responded that the hypothetical worker would be capable of performing approximately 45,000 jobs in Tennessee and 2,000,000 nationwide. [Tr. 461-62]. The VE specifically identified the following jobs: salad bar attendant, cafeteria food server, dishwasher, restaurant table cleaner, office cleaner, hand-packer, sorter, or counter. [Tr. 461]. If the claimant suffered from nine serious mental limitations as opined by treating physician Daniel Carroll [Tr. 379-80], all employment would be precluded. [Tr. 462-63]. Employment would also be precluded by the need to take a one-hour unscheduled nap during an 8-hour work shift. [Tr. 463].

V.

*Analysis*

Plaintiff offers several arguments in support of reversal or remand. The court will address these theories in turn.

A. *Drummond*

The present ALJ was also the author of the 1999 administrative decision that discontinued plaintiff's benefits. [Tr. 22, 39]. In his earlier decision, the ALJ found that plaintiff had the RFC to perform light work,

> except for work requiring perfect visual acuity (i.e., work involving the reading of small print or the manipulation of very small objects[)], working around hazards, such as heights or potentially dangerous moving machinery, and work requiring the ability to understand, remember, and carry out detailed or complex job instructions.

[Tr. 38]. In the present decision, however, the ALJ imposed no restrictions regarding heights, hazards, or dangerous machinery, even though the physical RFC assessments of two state agency file-reviewing physicians predicted that plaintiff should never climb ladders, ropes, or scaffolds, and that she should avoid all exposure to hazards. [Tr. 320-22, 336-38].

These reviewing physician assessments were based on the Sixth Circuit Court of Appeals's holding in *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997). [Tr. 320-22, 336-38]. The *Drummond* court held that, absent evidence of improved condition, a subsequent ALJ is bound by the RFC findings of a prior ALJ's final decision. *Id.* at 842. The present ALJ cited no improvement in plaintiff's condition and thus

7

ran afoul of *Drummond* by not finding plaintiff to be limited in working around heights and hazards. This error calls into question the VE evidence upon which the ALJ's ultimate decision was based.

However, an administrative decision should generally not be reversed and remanded where doing so would be merely "an idle and useless formality." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (citation omitted). An error can be found harmless where, for example, an earlier decision by the ALJ adequately addressed the issue. *See Hall v. Comm'r of Soc. Sec.*, No. 04-5572, 2005 WL 2139890, at *7 (6th Cir. Sept. 2, 2005).

At the 1999 administrative hearing, Dr. Hankins was presented with a hypothetical claimant subject to the same limitations applied in the present case plus an inability to work around hazards. [Tr. 35]. In response, Dr. Hankins identified a significant number of jobs that the hypothetical claimant could perform, and those jobs largely overlapped those identified in the present case - including dishwasher, restaurant table cleaner, office cleaner, and hand-packer. [Tr. 36]. Therefore, because the hazards restriction was adequately addressed in the ALJ's earlier decision, the court finds the present *Drummond* error to be harmless. "[W]here remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." *Wilson*, 378 F.3d at 547 (citation and quotation omitted).

B. Treating Source Opinions

Plaintiff next argues that the ALJ did not sufficiently credit the treating source opinions of Dr. Daniel Carroll and nurse practitioner Willie Hamilton. The opinions of treating physicians are entitled to great weight when supported by sufficient clinical findings consistent with the evidence. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). However, the Commissioner may reject the opinion of a treating physician if it is not supported by sufficient medical data and if the ALJ articulates a valid basis for doing so. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). The present ALJ found the treating source opinions to be "not supported by the documentary evidence and . . . inconsistent with other more reliable evidence of record." [Tr. 21]. The court wholly agrees with the ALJ's assessment.

*At her initial appointment* in April 2004, Dr. Carroll opined that plaintiff was "not able to do any type of functional work" [Tr. 331] but this opinion appears to be based on self-reported limitations rather than on objective findings. *See* 20 C.F.R. § 404.1527(d)(3) (opinions entitled to minimal weight where unsupported by objective evidence). Further, having seen plaintiff only one time as of the issuance of his April 2004 assessment, Dr. Carroll could essentially at that time not even be considered a treating source. *See* 20 C.F.R. § 404.1527(d)(2)(I) (focusing on length of treating relationship).

9

Similarly, Dr. Carroll's June 2004 statement that plaintiff "is not able to be employed in any type of job" [Tr. 330] appears to again be based on self-reports including panic attacks, and there is no indication that Dr. Carroll is a mental health professional. *See* 20 C.F.R. § 404.1527(d)(5) (opinions entitled to minimal weight where offered outside the physician's area of specialty). Later, in September 2005, Dr. Carroll opined that plaintiff cannot work a full 8-hour day due to back and neck pain. [Tr. 377]. This opinion is not supported by objective evidence in Dr. Carroll's records. *See* 20 C.F.R. § 404.1527(d)(3). Also in September 2005, Dr. Carroll also predicted serious emotional limitations secondary to anxiety attacks [Tr. 379-80], but - again - he is not a mental health professional and his opinion appears to be based wholly on plaintiff's self-reports. *See* 20 C.F.R. § 404.1527(d)(5).[4]

Nurse practitioner Hamilton is associated with Dr. Carroll. FNP Hamilton has opined that plaintiff is "completely unemployable" secondary to panic attacks. [Tr. 365, 367]. This opinion is of minimal value since FNP Hamilton, who is not a mental health professional, also appears to have based her assessment solely on plaintiff's self-reports. Moreover, a nurse practitioner is not an "acceptable medical source" who can provide evidence to establish an impairment, *see* 20 C.F.R. § 404.1513(a), and it is entirely within

---

[4] In a related issue, plaintiff criticizes the ALJ for not requesting "missing" records from Dr. Carroll. Plaintiff refers to a summary sheet [Tr. 369] referencing eight appointments between July 2004 and June 2005 for which corresponding records are not a part of the transcript. Plaintiff does not, however, explain to the court how the ALJ should have been aware that any necessary records were missing - particularly in light of the fact that plaintiff's counsel affirmed twice at the hearing that he had no objection to the contents of the administrative file. [Tr. 449, 464].

the Commissioner's discretion whether to consider the opinion of a nurse practitioner at all. *See* 20 C.F.R. § 404.1513(d).

As noted by the ALJ, the unsupported and extreme opinions of these two sources are inconsistent with the record as a whole. The record is replete with mild, benign, and "no acute distress" physical findings. [Tr. 219, 221-22, 224, 259, 282, 289, 345, 365-68]. For example, although plaintiff claims to be disabled by virtual paralysis of her right arm and leg, a physical examination in March 2005 found the right extremities to be neurovascularly and neurologically intact. [Tr. 345]. Also, plaintiff's purported disabling migraines are admittedly remedied by the use of Imitrex nasal spray, although plaintiff dislikes the taste of that medication. [Tr. 222].

In sum, the ALJ did not err in dismissing the opinions of plaintiff's treating sources. The court wholly agrees with the ALJ's statement that "these opinions are not supported by the documentary evidence and are inconsistent with other more reliable evidence of record." [Tr. 21].

### C. "Moderate" Mental Limitations

The only objective, hands-on psychological evidence of record is the 2004 consultative evaluation by clinical psychologist Steven Lawhon. Dr. Lawhon predicted no more than "mild" limitation in any work-related activity. [Tr. 296]. A March 2004 file review by Dr. Edward Sachs predicted some "moderate" limitations. [Tr. 313-14].

Plaintiff now criticizes the ALJ for adopting the conclusions of examining psychologist Lawhon over the conclusions of file-reviewing Dr. Sachs. However, the opinion of an examining source is generally entitled to greater weight than the opinion of a nonexamining source. *See* 20 C.F.R. § 404.1527(d)(1). Moreover, the ALJ presented Dr. Sachs's opinion to the VE as an alternate hypothetical, to which the VE testified that the enumerated jobs could still be performed even with "moderate" impairments. [Tr. 462-63]. This issue warrants no further discussion.

D. "Panic Attacks," Xanax, and Naps

Lastly, plaintiff criticizes the ALJ for not properly weighing her purported medication side effect (naps) stemming from her use of Xanax to remedy the "at least four panic attacks" she purportedly suffers daily. The court first observes that *even Dr. Carroll's records* indicate that plaintiff consumes more than the recommended dosage of Xanax. [Tr. 330]. Further, the record lacks objective documentation either that plaintiff has such an extraordinary need for napping or that she actually suffers from true panic attacks at all, as opposed to mere self-diagnosed episodes of anxiety.[5] Record evidence on these points merely echoes plaintiff's self-reporting, which has been shown to be far less than reliable.

Lastly, the court notes the examination by Dr. Lawhon which, again, is the only objective, hands-on psychological evidence before the court. Dr. Lawhon's assessment

---

[5] A true panic attack is "an episode of acute intense anxiety, with symptoms such as racing or pounding heart, sweating, trembling, chest pains, nausea, dizziness, faintness, chills or hot flashes, and feelings of choking or smothering." *Dorland's Illustrated Medical Dictionary* 172 (29th ed. 2000).

provides substantial evidence that, even with a panic disorder in an untreated state, plaintiff remains able to work.

The Commissioner's final decision will accordingly be affirmed. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge